IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 2017-CR- 10 |
| ) | |
| JAHEEM BENJAMIN, ) | |
| ) | |
| Defendant. ) | |

## MOTION TO DISMISS

The Defendant, Jaheem Benjamin, by and through his counsel, Brendan A. Hurson of the Office of the Federal Public Defender, pursuant to Fed. R. Crim. P. 12(b)(3)(C), hereby moves this Honorable Court to dismiss the charges pending against him. In support thereof, counsel states:

## INTRODUCTION

Residents of the Virgin Islands who grow marijuana are treated differently by federal prosecutors than similarly-situated marijuana growers who ply the same trade in states that have legalized the cultivation and sale of marijuana. This is the essence of a selective prosecution prohibited by the equal protection component of the Due Process Clause of the Fifth Amendment.[1] The illegal nature of Mr. Benjamin's prosecution stems from the U.S.V.I.'s unique status as a territory beholden to Congress. For this reason, the U.S.V.I. is barred from legalizing marijuana and thus can never meet the requirement to escape federal prosecution. This fact differentiates

---

[1] The Due Process Clause was made applicable to the Virgin Islands by the 1968 amendments to the Revised Organic Act of 1954. See 48 U.S.C. § 1561.

1

the U.S.V.I. from its sister states on the mainland who, like Colorado and others, can fully legalize marijuana without fear of immediate federal retribution. The Department of Justice (DOJ) has outlined strict guidance for when its prosecutors can initiate marijuana prosecutions in states where growing and selling the drug are legal. Congress has gone even further. Recent funding bills make it unlawful for the DOJ to expend funds on the investigation or prosecution of marijuana growers and sellers complying with the law in those states where marijuana is legal.

Mr. Benjamin is a Virgin Islander charged with growing marijuana. If the facts alleged prove true, he was complying with all DOJ guidelines for lawfully growing marijuana, save one: it remains illegal in the U.S.V.I. because the legislature has not, and cannot, legalize it. Accordingly, based solely on his residence, prosecutors have decided to enforce U.S. law against him, and not against others similarly situated, the essence of selective prosecution. As such, the case must be dismissed.

## RELEVANT FACTS

Jaheem Benjamin, a twenty-nine (29) year old lifelong resident of St. Croix, is alleged to have grown a relatively small amount of marijuana in an outbuilding behind his father's property in Upper Love. He was charged by Criminal Information on March 6, 2017 with growing and selling marijuana. The charges were based on the alleged discovery of marijuana plants by Officers of the Virgin Islands Police Department (V.I.P.D.). On February 14, 2017, officers went to Mr. Benjamin's residence in response to anonymous tip claiming "that a subject residing at 92 Upper Love, Frederiksted, U.S. Virgin Islands . . . is growing marijuana." Complaint, 1.

2



Figure 2 - A photograph of the marijuana plants alleged to have been grown by Mr. Benjamin. The plants fit into a modest Home Depot box.

When police arrived, they claim they encountered a cooperative Mr. Benjamin, who allegedly led them around the property, and consented to a search of the small shed behind the modest home. Police allege that Mr. Benjamin's congeniality went even further, as they claim he purportedly volunteered that "the structure used to be a garage but now contained approximately fifty (50) marijuana plants." Id. Authorities contend that an examination of the shed led to the discovery of one hundred and thirty-seven (137) marijuana plants "in various stages of growth." Id. at 2. For his efforts to grow marijuana, Mr. Benjamin



Figure 1 - The staff of Green Man Cannabis (above) in Denver, Colorado, grows and sells marijuana in blatant violation of the CSA with no risk of federal prosecution.

was arrested and charged with federal offenses including manufacture of marijuana (count 1), possession with the intent to distribute marijuana (count 2), and illegal use of utility equipment

3

(count 3). Information, 1-3.



*Figure 3- Despite purportedly engaging in the same activity as countless marijuana growers in Colorado and other states who operate with impunity, Mr. Benjamin (above) was selected for federal prosecution.*

Christian Hageseth is a resident of Colorado. He, like Mr. Benjamin, grows marijuana. In fact, and unlike Mr. Benjamin, Mr. Hageseth grows and sells massive quantities of marijuana. He oversees a large team of employees, including a "director of cultivation," an accountant, a "product manager," and more. See Figure 3 (supra). Mr. Hageseth is the founder of Green Man Cannabis, a Colorado business that grows and sells marijuana for profit. His marijuana is "award-winning," having recently been feted at the annual "Cannabis Cup" for its "Ghost Train Haze" and "Starkiller" entries, both strains of marijuana sold high prices at both of his store locations in the Denver area. Unlike Mr. Benjamin, Mr. Hageseth is not on federal pre-trial release for his marijuana-growing endeavors. This despite the fact that he proudly announces the rapid growth of his marijuana business on his website, inviting the public to "reap the benefits" of a "new and improved 115k sqft growhouse!" See http://www.greenmancannabis.com/historic/ (last visited May 9, 2017).



*Figure 3 - A photograph of marijuana plants being transported to Green Man Cannabis' new 115,000 square foot marijuana growing facility.*

There are some who argue that the reason Mr. Hageseth remains free while Mr. Benjamin faces a possible federal prison sentence is because the former's home of Colorado has "legalized" the growth and sale of marijuana whereas the U.S.V.I. has not. This answer is only half-correct. In truth, these two men are being treated dissimilarly despite identical behavior because of the government's selective prosecution of drug offenses. The charges must be dismissed.

## LAW/ARGUMENT

**1. Mr. Benjamin has been unfairly selected for federal prosecution.**

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." Yick Wo v. Hopkins, 118 U.S. 356, 373(1886). Thus, though "a prosecutor's discretion to enforce the law, [is] broad, [it] is nonetheless constrained by the equal protection component of the Due Process Clause of the Fifth Amendment." United States v. Hedaithy, 392 F.3d 580, 606 (3d Cir. 2004) (citing United States v. Armstrong, 517 U.S. 456, 464(1996)).

In practice, this means that a prosecutor may not base a charging decision "upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456 (1962). Dismissal of charges is appropriate where a "[a] defendant . . . demonstrate[s] that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." United States v. Armstrong, 517 U.S. 456, 464–65(1996) (citing Hopkins, 118 U.S. at 373). The requirements for

5

a selective-prosecution claim draw on "ordinary equal protection standards." Id. at 465 (citations omitted). Therefore, Mr. Benjamin "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" Id.

The Supreme Court most recently addressed a selective prosecution challenge in Armstrong. 517 U.S. at 456. There, the Court considered whether an African American defendant who alleged that he was unfairly singled out for prosecution on the basis of his race was entitled to discovery relevant to his claims. Id. Affirming that he was not entitled to the requested discovery, the Court held that he had failed to satisfy a threshold showing "that the Government declined to prosecute similarly situated suspects of other races." Id. Thus, in order to maintain an allegation that the Executive Branch is unlawfully utilizing its prosecutorial powers, it is imperative that a defendant first establish that "persons similarly situated have not been prosecuted." See United States v. Schoolcraft, 879 F.2d 64, 68 (3d Cir. 1989).

It is uncontroverted that when it comes to marijuana, "the executive branch has decided to enforce its laws against some individuals and not against others — the essence of selective prosecution — depending on where one resides." United States v. Guess, No. 4:07-CR-112-2, 2016 WL 6824424, at *6 (E.D. Va. Nov. 3, 2016). Mr. Benjamin, who lives on St. Croix, finds himself under federal pre-trial supervision while Mr. Hageseth, the Colorado marijuana dealer, proudly hoists the "cannabis cup." This is a textbook example of a "selective prosecution."

**2. The History of Prosecuting Marijuana.**

"For most of American history, marijuana was legal to grow and consume." Erwin Chemerinsky, Jolene Forman, Allen Hopper, Sam Kamin, Cooperative Federalism and Marijuana Regulation, 62 UCLA L. Rev. 74, 81 (2015). In 1937, the U.S. government dropped marijuana

from the list of approved medicines over the objection of the American Medical Association. Id.[2] In 1970, the federal Controlled Substances Act ("CSA") was signed into law. See Pub.L. 91-513, Title II, § 202, Oct. 27, 1970(codified at 21 U.S.C. § 812). The CSA classified drugs into groups, or "Schedules," based on factors including their "potential for abuse" and "accepted medical use." Id. With little scientific support, marijuana joined LSD, heroin, and other serious narcotics on Schedule I drug, meaning that Congress classified it as having: "(1) a high potential for abuse; (2) no currently accepted medical use in treatment in the United States; and (3) a lack of accepted safety for the use of the drug under medical supervision." 21 U.S.C. § 812 (b)(1).

"Because Schedule I is the most restricted drug classification under the CSA, the production, sale, and use of marijuana are largely banned by federal law." Americans for Safe Access v. Drug Enf't Admin., 706 F.3d 438, 439 (D.C. Cir. 2013). Originally, all states apparently agreed with this classification as marijuana was, at least in 1970, banned in all 50 states. Cooperative Federalism and Marijuana Regulation, 62 UCLA L. Rev. at 85. However, the blanket criminalization of marijuana began to change in 1996 when California passed a statewide referendum legalizing the use of marijuana for medical purposes. Id. Soon, so-called "medical marijuana" bills swept the nation, with Alaska, Oregon, Washington, Hawaii, Colorado, Maine,

---

[2] Scholars have argued that there is strong evidence supporting the argument that decision to regulate marijuana in 1937 was motivated by racial animus toward people of color. Martin D. Carcieri, Obama, the Fourteenth Amendment, and the Drug War, 44 Akron L. Rev. 303, 326 (2011) ("Beyond the drug war's racially disparate impact, then, there is evidence that racism has long been a dominant motive behind U.S. marijuana prohibition.").

and Nevada following suit with medical marijuana bills of their own.  Id.[3]  As of this writing, it is believed that "[a] total of 28 states, the District of Columbia, Guam and Puerto Rico now allow for comprehensive public medical marijuana and cannabis programs."  National Conference of State Legislatures, State Medical Marijuana Laws (updated 3/16/17) (found at http://www.ncsl.org/research/health/state-medical-marijuana-laws.aspx) (last visited 5/9/17).

State-level efforts to address marijuana laws soon spread to "decriminalizing" the drug, meaning that in many states "certain small, personal-consumption amounts are a civil or local infraction, not a state crime (or are a lowest misdemeanor with no possibility of jail time)." National Conference of State Legislators, Marijuana Overview (found at http://www.ncsl.org/research/civil-and-criminal-justice/marijuana-overview.aspx#Decriminalization ).  (last visited 5/9/17).  The seemingly constant change in state-level views toward marijuana left the DOJ scrambling to catch up with evolving marijuana norms.  "In 2009, then-Deputy Attorney General Ogden issued a memorandum announcing a policy of non-enforcement of federal marijuana laws with regard to 'individuals with cancer or other serious illnesses who use marijuana as part of a recommended treatment regimen . . . [and] caregivers ... who provide such individuals with marijuana.'"  United States v. Dayi, 980 F. Supp. 2d 682, 686 (D. Md. 2013) (citation omitted).  "However, Mr. Ogden explicitly noted that the 'prosecution of commercial enterprises that unlawfully market and sell marijuana for profit continues to be an enforcement priority of the Department.'"  Id.

---

[3]  For a more comprehensive summary of the evolution of marijuana laws, the National Organization for the Reform of Marijuana Laws (NORML) maintains an accurate "Marijuana Law Reform Timeline."  See Marijuana Law Reform Timeline, NORML, (http://norml.org/about/item/marijuana-law-reform-timeline) (last visited 5/9/17).

The clarity provided by Mr. Ogden, and any hope it provided to marijuana growers that relief from the CSA was soon to come, faded as the DOJ resumed a role in advocating against marijuana legalization at the state level. For example, then Attorney General Eric Holder actively campaigned against California's efforts to pass a ballot initiative legalizing recreational marijuana by noting that federal authorities might choose to prosecute growers in the event the measure succeeded. See Cooperative Federalism and Marijuana Regulation, 62 UCLA L. Rev. at 87. Though the DOJ's efforts left California without legalized recreational marijuana (the ballot measure was narrowly defeated), other states ignored the threats and moved forward with their own legalization schemes. The DOJ was not pleased.

Following "an increase in the scope of commercial cultivation, sale, distribution and use of marijuana for purported medical purposes ... [as a result of state legislation] to authorize multiple large-scale, privately-operated industrial marijuana cultivation centers," the DOJ again clarified that its moratorium on prosecuting marijuana applied to *medical* marijuana, and "did not apply to those 'in the business of cultivating, selling or distributing marijuana, . . . even where those activities purport to comply with state law.'" Dayi, 980 F. Supp 2d at 686 (citing Memorandum from James M. Cole, Deputy Att'y Gen. of the United States, to United States Attorneys regarding Guidance regarding the Ogden Memo in Jurisdictions Seeking to Authorize Marijuana for Medical Use (June 29, 2011)("2011 Cole Memo").

Despite DOJ's threat, more states approved marijuana for recreational purposes. Colorado was first in deciding to treat marijuana in the same way most states treat alcohol. See Colo. Const. Art. XVIII, § 16 (finding that "marijuana should be regulated in a manner similar to alcohol" and legalizing the cultivation, sale, and manufacture of marijuana). Washington State

9

soon followed. See Wash. Rev. Code Ann. §§ 69.50.101-.609 (West 2013) (legalizing the production and limited distribution of marijuana). Alaska, the District of Columbia, Oregon, and most-recently Massachusetts have all followed suit by legalizing the growth and use of marijuana.

Following the highly-publicized Colorado efforts, the DOJ again changed course and "extended its policy of non-enforcement to include even 'large-scale, for-profit commercial enterprises' involved in the 'cultivation, distribution, [and] sale' of marijuana." Dayi, 980 F. Supp. 2d at 685 (citing Memorandum from James M. Cole, Deputy Att'y Gen. of the United States, to United States Attorneys regarding Guidance regarding Marijuana Enforcement (August 29, 2013) ("2013 Cole Memo"). This second Cole memo clarified that so long as marijuana grow operations adhered to state law, and did not implicate one of the federal government's "enforcement priorities," they could carry on without fear of federal intervention. Id. These eight (8) priority "enforcement areas" are:

(1) Preventing the distribution of marijuana to minors;

(2) Preventing revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels;

(3) Preventing the diversion of marijuana from states where it is legal under state law in some form to other states;

(4) Preventing state-authorized marijuana activity from being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity;

(5) Preventing violence and the use of firearms in the cultivation and distribution of marijuana;

(6) Preventing drugged driving and the exacerbation of other adverse public health consequences associated with marijuana use;

(7) Preventing the growing of marijuana on public lands and the attendant public safety and environmental dangers posed by marijuana production on public lands; and

10

  (8)    Preventing marijuana possession or use on federal property."

Id. (citing 2013 Cole Memo).

It is currently the view of the DOJ[4] that "the existence of a strong and effective state regulatory system, and an operation's compliance with such a system, may allay the threat that an operation's size poses to federal enforcement interests." 2013 Cole Memo. As such, "under the [DOJ's] current enforcement guidelines, marijuana traffickers — even large-scale, for-profit commercial enterprises — will not be prosecuted **provided they comply with state laws and regulations and do not fall awry of the eight federal enforcement interests**." Dayi, 980 F. Supp. 2d at 686–87 (emphasis added). Under some circumstances, the government is now *prohibited* from using its funds to prosecute some violations of the CSA involving marijuana due the "Rohrabacher-Farr amendment," a rider to omnibus appropriations bills. That rider explicitly de-funded the DOJ's efforts to prosecute marijuana offenses in those states that legalized marijuana. See Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113–235, § 538, 128 Stat. 2130, 2217 (2014). That rider was modified in 2016:

> **None of the funds made available in this Act to the [DOJ] may be used, with respect to any** of the States of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, and Wyoming, or with respect to the District of Columbia, Guam,

---

[4]    Attorney General Jeff Sessions recently affirmed that the policies and priorities outlined in the 2013 Cole Memo remain in place today. See Trump Probably Won't Crush the Legal Weed Industry, But He Could do Something Worse, Alex Haleperin, Slate Magazine, March 16, 2017 (available at https://www.washingtonpost.com/news/wonk/wp/2017/01/10/sessions-on-enforcing-federal-marijuana-laws-it-wont-be-an-easy-decision/)(last visited March 27, 2017) (noting that the 2013 Cole Memo remains the most up-to-date guidance from the DOJ on when it will prosecute those who cultivate and distribute marijuana).

11

or Puerto Rico, **to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana.**

SEC. 542, Consolidated Appropriations Act, 2016, Public Law 114-113, 129 Stat 2242, December 18, 2015 (emphasis added). The amendment remains in effect today. See Public Law No: 114-254 (12/10/2016)(continuing all provisions of the above appropriations through April 28, 2017); H.R. 244, the Consolidated Appropriations Act, 2017 (extending same until September 30, 017); see also United States v. Daleman, 2017 WL 1256743, at *2 n.3 (E.D. Cal. Feb. 17, 2017)(noting the government's agreement that the rider extended to later funding bills).

The only federal appellate court to interpret the meaning of the rider held that it "prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws." United States v. McIntosh, 833 F.3d 1163, 1177 (9th Cir. 2016). In effect, it "prohibits the federal government only from preventing the implementation of those specific rules of state law that authorize the use, distribution, possession, or cultivation of medical marijuana." Id. at 1179. Thus, the Rohrabacher-Farr amendment provides defendants alleged to have violated federal marijuana laws in states that have legalized medical marijuana an avenue to challenge their prosecutions. As the Ninth Circuit held in addressing several motions claiming dismissal was warranted because DOJ had violated the rider by prosecuting cultivators of "medical marijuana":

> If DOJ wishes to continue these prosecutions, Appellants are entitled to evidentiary hearings to determine whether their conduct was completely authorized by state law, by which we mean that they strictly complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana. We leave to the district courts to determine, in the first instance and in each case, the precise remedy that would be appropriate.

United States v. McIntosh, 833 F.3d 1163, 1179 (9th Cir. 2016). Further, the McIntosh Court

expressly authorized "injunctive relief enjoining the DOJ from maintaining marijuana prosecutions (effectively dismissing those cases) as a possible remedy for DOJ's non-compliance with the Rohrabacher-Farr amendment. Id. at 1173 ("When Congress has enacted a legislative restriction like § 542 that expressly prohibits DOJ from spending funds on certain actions, federal criminal defendants may seek to enjoin the expenditure of those funds, and we may exercise jurisdiction over a district court's direct denial of a request for such injunctive relief.").

In the wake of the Rohrabacher-Farr amendment, courts addressing alleged noncompliance with its dictates, at minimum, have held evidentiary hearings on the question of whether the government can be enjoined from prosecuting medical marijuana cultivators and distributors who otherwise comply with their respective state laws. See United States v. Samp, No. 16-CR-20263, 2017 WL 1164453, at *2 (E.D. Mich. Mar. 29, 2017)(three (3) day evidentiary hearing); Daleman, 2017 WL 1256743, at *1 (holding hearing); United States v. Silkeutsabay, No. 15-30392, 2017 WL 766985, at *2 (9th Cir. Feb. 28, 2017)(vacating guilty pleas and ordering the district court to conduct an evidentiary hearing on whether defendant's marijuana cultivation was in compliance with Washington's medical marijuana laws).

It is now the case that marijuana cultivators in states that have legalized the drug for medicinal purposes can operate with *de facto* immunity as Congress has afforded them the legal power to enjoin any efforts to prosecute them. Thus, the Rohrabacher-Farr amendment commands the DOJ to treat residents of the U.S.V.I. - where marijuana is not legal in any form or for any use - differently than residents of those states that have legalized marijuana for medical purposes. Coupled with the DOJ's established policy of not prosecuting those who row or sell marijuana (recreational or otherwise) as long as they comport their conduct with existing state law

13

(and satisfy the other requirements of the 2013 Cole Memo), the effect is blatantly discriminatory. This is because the "federal prosecutorial policy with respect to marijuana possession [and distribution] produces an effect that is, at least to a degree, undoubtedly and strikingly similar to the effect of selective prosecution: it results in the prosecution of certain individuals (marijuana possessors [and growers] not in contravention of DOJ's enforcement priorities) for a crime that other, similarly-situated individuals (fellow marijuana possessors [and growers] also not in contravention of DOJ's enforcement priorities) are not prosecuted for." Guess, 2016 WL 6824424 at *6.  For this reason, the instant prosecution should be halted.

**3. Residents of the U.S.V.I. are prohibited from complying with the 2013 Cole Memo or the Rohrabacher-Farr amendment, thus ensuring that Virgin Islanders like Mr. Benjamin are treated differently than their mainland counterparts.**

Unlike the governing bodies in the 50 states, the Virgin Islands Legislature is expressly forbidden by statute from passing legislation that conflicts with *any* federal law. See Jackson v. W. Indian Co., 944 F. Supp. 423, 428 (D.V.I. 1996) ("It is settled that Congress has sovereignty over the territories of the United States and accordingly has power to legislate for a territory with respect to all subjects upon which the legislature of a state might legislate within the state."). The Revised Organic Act of 1954, the "unofficial constitution" of the U.S.V.I., expressly prohibits conflict with any federal law by holding that "the legislature shall have power . . . to enact new laws **not inconsistent with any law of the United States** applicable to the Virgin Islands, subject to the power of Congress to annul any such Act of the legislature." 48 U.S.C. § 1574 (c) (emphasis added); see also Gov't of Virgin Islands v. Dowling, 866 F.2d 610, 615 (3d Cir. 1989)("That is, the Virgin Islands legislature has been authorized to promulgate a criminal code not inconsistent with federal law and to prosecute those offenses in the Territorial Court as well as

14

the District Court.") The theme of congressional supremacy is repeated throughout the Revised Organic Act. See, e.g. 48 U.S.C. § 1561 (noting that "[a]ll laws enacted by Congress with respect to the Virgin Islands and all laws enacted by the territorial legislature of the Virgin Islands which are inconsistent with the provisions of this subsection are repealed to the extent of such inconsistency."); 48 U.S.C. § 1574 (a)(" The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this chapter **or the laws of the United States made applicable to the Virgin Islands** . . . .")(emphasis added). Though the U.S.V.I. has its own legislature, it is beholden to Congress in ways its state counterparts are not.

This uniquely tenuous nature of U.S.V.I. sovereignty was addressed in <u>Virgin Islands v. Clark</u>, an opinion of the Superior Court addressing claims that it had no jurisdiction to entertain the criminal prosecution of a federal agent charged with homicide:

> Moreover, . . . all powers vested within the Territory of the U.S. Virgin Islands are derived from Congress via the "Territorial Clause" and as such, Congress has plenary power over the unincorporated Territory of the U.S. Virgin Islands. **Congress' sovereignty over the unincorporated Territory of the U.S. Virgin Islands is further recognized by the fact that Congress retains the right to revise, alter, revoke and/or annul local legislation pursuant to the "Territorial Clause."** So, despite Congress' intention to grant the unincorporated Territory of the U.S. Virgin Islands full power of self-determination and/or autonomy similar to that of states, when it enacted the Organic Act of 1936 and later, the Revised Organic Act of 1954 (including all subsequent amendments), Congress' intentions neither operated to divest its plenary power over the U.S. Territory nor changed the Territory's "unincorporated" status. **Hence, even if the application of the Revised Organic Act of 1954, as amended, creates "trappings of a separate sovereignty," the fact still remains** *that unless* **and** *until* **there is** *an adjustment in the status of the U.S. Virgin Islands***, what Congress gives to the unincorporated Territory of the U.S. Virgin Islands with one hand can be taken away with the other.** As such, the powers bestowed upon the unincorporated Territory of the U.S. Virgin Islands by Congress can be "fleeting," "ephemeral," and/or subject to total divestment because the Territory of the U.S. Virgin Islands "marches to the beat of a single sovereign drum major" — Congress. Consequently, the Territory is essentially an instrumentality of the U.S. government.

(numerous citations and footnotes omitted)(italics in original).

15

The U.S.V.I., as an "instrumentality of the U.S. government," finds itself essentially forced to comply with federal law in a way that the fifty (50) states do not. Thus, even if the legislature of the U.S.V.I. were to pass a bill sanctioning a well-regulated marijuana industry, for medical or recreational purposes, it would be dead on arrival at the governor's desk as it would be in direct conflict with the CSA, a law passed by the U.S. Congress, and could be "revise[d], alter[ed], revoke[d] and/or annul[led]" at the will of Congress. Id. Moreover, the governor of the U.S.V.I. would be violating federal law to even sign such a bill since legalizing marijuana in contravention of the CSA would violate the legislative mandate that the governor "shall be responsible for the faithful execution of the laws of the Virgin Islands *and the laws of the United States applicable in the Virgin Islands*." 48 U.S.C. § 1591 (emphasis added).[5] As such, the Virgin Islands legislature is constrained to pass laws that fully comport with the federal code.

It is true that conflict between state and federal law is not uncommon, and that "[t]he Supremacy Clause [of the U.S. Constitution] unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." Gonzales v. Raich, 545 U.S. 1, 29 (2005). But the Supremacy clause, as set forth at U.S. CONST. art. VI, cl. 2, is not applicable "to the unincorporated Territory of the U.S. Virgin Islands." See Clark, 2010 WL 1923797, at *4; see also 48 U.S.C. § 1561 (omitting Article VI, Clause 2 from those constitutional provisions that reach the islands); St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin

---

[5] It bears noting that it would be difficult to quietly pass a bill legalizing marijuana with the hope it goes unnoticed by Congress since federal law mandates that "[a] listing of all laws enacted by the legislature each year shall be transmitted with the annual report to Congress required pursuant to section 1591 of this title." 48 U.S.C. 1575 (g). The undersigned is unaware of any state legislature in the nation that requires similar notification to the federal government.

16

Islands, 218 F.3d 232, 237–38 (3d Cir. 2000)(holding that the *principles* of the Constitution's Supremacy Clause – as opposed to the clause itself - "are made applicable to the laws of the Virgin Islands through the Revised Organic Act . . . .")(citing 48 U.S.C. § 1574(a)). As such, there exists a critical practical difference between *constitutional* "pre-emption" mandated by the Constitution's Supremacy Clause, and the *statutory* "preemption" applicable to the U.S.V.I.

To enforce the former, there must be a legal action filed alleging infringement upon a federally protected interest since "the Supremacy Clause is not the "'source of any federal rights,'" . . . and certainly does not create a cause of action." Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378, 1383 (2015). As the late Justice Scalia noted, "the Supremacy Clause is not the 'source of any federal rights,' . . . , and certainly does not create a cause of action. It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." Id. at 1383 (citations omitted). The Supremacy Clause does not automatically nullify conflicting law, nor does it create an independent right of action permitting a challenge solely on that ground. Id. at 1384 ("To say that the Supremacy Clause does not confer a right of action is not to diminish the significant role that courts play in assuring the supremacy of federal law. For once a case or controversy *properly* comes before a court, judges are bound by federal law.")(emphasis added). Thus, to effectuate the Supremacy Clause as it relates to criminal law, there must be a criminal action rightly before an appropriate tribunal. Id. ("Thus, a court may not convict a criminal defendant of violating a state law that federal law prohibits. . . .")(citations omitted).

This means that though the CSA is the supreme law of the land and would pre-empt state law to the contrary, the CSA's muscle can only be flexed by the Attorney General. Id. Through

17

the 2013 Cole Memo, the Attorney General announced that it will not prosecute individuals who grow marijuana in those states where it is legal. Further, the Rohrabacher-Farr amendment essentially enjoins prosecutors from even initiating many of those cases. As such, citizens the fifty (50) states have the opportunity to petition their state governments for the creation of a regulated marijuana industry. Once implemented, the risk of federal prosecution for marijuana is eliminated. The Supremacy Clause does not upset state legalization schemes because the DOJ has agreed to simply "look the other way" and not initiate a "case or controversy" enabling the review of any state law conflict with the CSA.

In contrast, a marijuana legalization scheme that is incompatible with the CSA passed by the U.S.V.I. legislature is subject to immediate revocation or annulment, thus invalid regardless of the DOJ's decision to initiate a prosecution. Clark, 2010 WL 1923797, at *9. Since the U.S.V.I. is expressly forbidden from legalizing marijuana, Mr. Benjamin can *never* join the class of individuals exempt from prosecution for marijuana cultivation because he is categorically ineligible to follow the DOJ's requirement that he "comply with state laws and regulations" concerning the cultivation of marijuana. Dayi, 980 F. Supp. 2d at 686–87. Thus, he is treated differently than other U.S. residents, the essence of a selective prosecution.

The selective nature of federal marijuana prosecutions is particularly acute in the U.S.V.I., where it is well-established that "the territorial and federal prosecutors are but separate arms of the same sovereign. . . ." Gov't of Virgin Islands ex rel. Robinson v. Schneider, 893 F. Supp. 490, 497 (D.V.I. 1995); see also Puerto Rico v. Sanchez Valle, 136 S. Ct. 1863, 1870 (2016). As Mr. Benjamin's case shows, the permanent ban on legalizing marijuana means that Virgin Islanders who grow and sell it face the very real prospect of federal prosecution. But it also means that

18

regardless of residential support for the legalization of marijuana,[6] the potential for prosecution in the Superior Court exists, too, since "federal and territorial prosecutors [are expected] to work in concert when bringing charges against criminal defendants." Schneider, 893 F. Supp. at 495.

### 4. Mr. Benjamin Complied with the Dictates of the 2013 Cole Memo.

As noted, the DOJ will refrain from prosecuting individuals for marijuana cultivation and sale in those state where it is legal as long as they comply with the DOJ's rules. Assuming the government's allegations to be true (for purposes of this filing), Mr. Benjamin was complying the dictates of the 2013 Cole Memorandum:

| 2013 Cole Memo Requirement | Applicable to this case |
| --- | --- |
| 1) Distribution to minors? | Not applicable. |
| 2) Revenue to criminal enterprises, gangs, or cartels? | Not applicable. |
| 3) Diversion from states where it is legal under state law in some form to other states. | Not applicable. |
| 4) Cover or pretext for the trafficking of other illegal drugs or other illegal activity? | Not applicable. |
| 5) No violence or firearms | Not applicable. |
| 6) Drugged driving? | Not applicable. |
| 7) Growing of marijuana on public lands? | Not applicable. |
| 8) Possession or use on federal property? | Not applicable. |

Thus, if the U.S.V.I. could legalize marijuana and did so, Mr. Benjamin would not be prosecuted. Since the U.S.V.I. is excluded from legalizing marijuana, Mr. Benjamin's is a selective prosecution that violates the Due Process Clause, and must be dismissed.

### CONCLUSION

Defendants like Mr. Benjamin are treated differently than similarly-situated alleged

---

[6] Support for legalizing marijuana is high in the U.S.V.I. In 2014, a referendum supporting the legalization of medicinal marijuana was supported by a majority of voters.

marijuana growers in states that have legalized the cultivation and sale of marijuana and comply with the requirements of the 2013 Cole Memo and the Rohrabacher-Farr amendment.  Further, because of its unique status as a territory beholden to Congress, the U.S.V.I. is barred from contradicting the CSA and can never legalize marijuana.  Accordingly, based solely on his residence, "the executive branch has decided to enforce its laws against" individuals like Mr. Benjamin, "and not against others — the essence of selective prosecution . . . ."  Guess, 2016 WL 6824424 at *6.   This case must be dismissed.

**Dated: May 11, 2017**

                                      Respectfully submitted,

                                      OMODARE JUPITER
                                      FEDERAL PUBLIC DEFENDER

                                      s/ *Brendan A. Hurson*
                                      Brendan A. Hurson, Esq.
                                      Assistant Federal Public Defender
                                      1336 Beltjen Rd., Suite 202
                                      St. Thomas, VI 00802
                                      Tel: (340) 774-4449
                                      Fax: (340) 776-7683
                                      E-mail:Brendan_hurson@fd.org

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the 11th of May, 2017, I electronically filed the foregoing *Motion To Dismiss* with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties of record:

Alphonso G. Andrews. Emily J. Wasserman
1108 King Street, Suite 201
Christiansted, VI 00820
340-773-3920; Fax: 340-773-1407
Email: alphonso.andrews@usdoj.gov; emily.wasserman@usdoj.gov

                                      s/ *Brendan A. Hurson*